is Durham v. Ocwen Loan Servicing. Good morning. May it please the court, Lee Marshall on behalf of the appellant. This case presents the question of whether Article 9, Section 406 creates an independent right and cause of action for an alleged assignee of an account who sends a notice of assignment to the account debtor. Now this is not a theoretical question. Recognition of such a right would mean that an alleged assignee could, in the words of the Fourth Circuit, create rights out of nothing more than a notification. On the other hand, recognition that Section 406 merely recognizes or establishes the right of the account debtor to not make duplicative payments without notice keeps in place the existing rights and obligations under the common law. Now there was a real difference in this case between those two things. Because the jury was only instructed on Durham's statutory cause of action under Section 406, they did not have to find that Durham, in fact, had purchased any of the accounts at issue. And in fact, the evidence was that Durham didn't know which accounts it had purchased and which accounts it did not purchase. And under Durham's alternative security interest theory, the jury also did not have to find that Durham, in fact, had a security interest or that that security interest in collateral was somehow, they had the right to collect on that as a result of some existing, still existing debt or default. Now instead, based on Durham's statutory cause of action, the jury was allowed to find for Durham based on a notice of an alleged assignment and a failure to pay the alleged assignee. Now, why does Section 406 not create an independent cause of action? I think you start with the language of it, which squarely speaks to the right of the account debtor. It talks about the rights that an account debtor may pay and may discharge its obligations by either paying to the account holder without notice or to pay to the assignee after notice. And comment two of Section 406 reinforces that point. Comment two says that it provides for the general rule concerning an account debtor's right to pay the assignor until the account debtor receives the appropriate notice. So we're talking about a statute that is recognizing the account debtor's rights. And in effect, our position is that Section 406 is a shield. It is a shield for the account debtor so that they are not subject to duplicative payment demands prior to getting notice of an assignment. Well, how do you, in subsection A, the last sentence, after the account debtor has received notice, the statute provides that the account debtor may not discharge the obligation by paying the assignor. But in this case, isn't that exactly what happened? Well, you're right, Your Honor. The account debtor, again, it's talking about the rights of the account debtor. In one situation, it gives the account debtor a defense. And in the other situation, it does not give the account debtor a defense. Our position is that there is nothing in Section 406 that gives the assignee a cause of action. It doesn't create a right for the assignee out of thin air merely by sending a notice. So it is true that Ocwen, in this case, after notice, would not have the defense, well, I paid the original account holder. But that doesn't speak to the question of whether or not Section 406 gives the assignee a cause of action. For the assignee to have a cause of action, you would have to look traditionally to common law claims. And it's our position that recognizing, just like the Fourth Circuit did, that Section 406 does not create an independent right and cause of action is not going to upset any apple cart here. There are common law claims that assignees have been bringing for ages for these types of claims. Breach of contract, breach of assigned contract, action on account, account stated, wrongful payment. There are various common law claims out there that could fit and have fit these types of causes of action. But that's not the cause of action that was asserted here. The complaint is very clear that this was a statutory cause of action under Section 406. And Durham recognized the distinction between those two things. We have a nearly parallel case that's called Durham v. Select Portfolio Servicing. It was cited in the 28J letters. This is the same factoring agreement with the same law firm. They just brought, Durham brought in another case against a different account debtor. And in that case, the court recognized the problem associated with an independent cause of action under Section 406, suggested that there might not be one, and Durham went back, they amended, they added a common law action on account in that case. Now, could Durham have done that in this case? Yes, at a certain point they could have. But now we're. Would a bankruptcy proceeding have interfered with that? Well, I think, you know, at the beginning of this case, when Durham's theory was that they purchased the accounts, then I don't think that the bankruptcy proceedings would have interfered with that at all. But at a certain point in the case, and I think it was right around summary judgment, it became clear that Durham had no evidence as to which accounts it had purchased and which it had not. And then it said, well, we've got a security interest in all of these accounts. And so I think once they move to that theory, I think we're running into a real problem with bankruptcy court jurisdiction. Because they are asserting a security interest in the accounts that are owned by the debtor. And there's an 11th Circuit case directly on point in Empire for him that my opponent, Mr. Ullman, argued for the factor in that case. And he took the position in that case that the accounts in which his client had a security interest were, in fact, property of the bankruptcy estate. It would be a core proceeding, the bankruptcy. Yeah, it would be a core proceeding, that's right. And so, you know, I would never, I'm not in the business of suggesting to the court that it should try and avoid issues, but all of this, quite frankly, should be sent over to the bankruptcy court. Because we've got an adversary complaint in the bankruptcy case right now, filed by the trustee against Durham, suggesting that Durham took more money out of the business than they put into the business. So this case is directly relevant to that theory. And that's also another point as to why section 406, and why the use of it here created problems. If, in fact, Durham had been required to prove that they had a security interest, that there was a security interest and to collateralize the debt that they had, then they would have had to have shown that there still was a debt, and that they had not been fully paid back. But section 406 allowed them to short circuit all of that, because they just had to show, hey, we sent a notice, and they paid the account holder after the notice. That's creating rights out of thin air, and it's not consistent with what their actual theory was, and it's only by recognizing this statutory cause of action under section 406 that they got away with that. You mentioned at the beginning, in talking about 406, that Durham had not established which accounts had been assigned to it. Does it matter under 406? While it might matter if there's a security interest being alleged, does it matter under 406, or simply sending a notice that says, it's been assigned to us, start paying us? Is that all that's necessary? Well, we think it should matter. We think that section 406 talks about assignments. It doesn't talk about security interests. Section 607 talks about security interests. They didn't assert a cause of action under 607. Had they asserted a cause of action under 607, Forrest Capital's holding, and from the Forrest Circuit, that section 607 doesn't create a cause of action either, would apply, because there's a subsection, I think it's 607D, that says this section creates no duty for the account debtor that doesn't already exist. So I think the answer to your question is, yes, it matters. They did not show that they purchased these accounts. The factoring agreement here talks about accounts that are purchased and assigned. They use those terms equivalently. The factoring agreement talks about non-purchased accounts in which they have a security interest that are not assigned, and so. Well, I guess my question is, it probably matters more between Durham, the agreement that Durham reached with the law firm as to which ones were assigned, but Durham has just reached out to Occoquan, sent the notice, and said these accounts have been assigned to us, start paying us. Does it really matter to Occoquan which accounts have been paid? Well, I mean, I think it, you know, did it matter at the time to Occoquan as to, well, you know, they pay one or they pay the other? I think it did matter. I mean, they had a provision in their local council agreement that says that you can't assign this agreement or our accounts without written consent, which they never gave. And it certainly matters now, right? Because, I mean, now Occoquan is, you know, number one out the $1.5 million in foreclosure funds that were not remitted by the law firm, which we've alleged should have been set off once the jury recognized our set-off defense. And so I think all of those things do matter, Your Honor. And I think that the biggest problem here, though, is once the district court recognized this as an independent cause of action, it basically threw the burden of proof out the window for what would normally be required to be proven here. And I think just one more example of that before I eat into my rebuttal is, you know, they got something like $496,000 of funds that GMAC owed to the law firm. And the reality was that Occoquan did not acquire GMAC. Occoquan was not a successor to that local council agreement. And so there was a, again, just the recognition of that cause of action, that statutory cause of action that does not exist, allowed Durham to just blow right through that burden of proof. I'll save the balance of my time. Thank you. Good morning. May it please the court. My name is Michael Ullman of Ullman and Ullman PA. I'm here with my co-counsel, Jared Ullman. And we were trial counsel on behalf of Durham in this case. The standard of review in connection with the jury findings is a difficult one to overcome, one that I don't believe that Occoquan can establish. They have to demonstrate that there was a complete absence of evidence supporting a jury's findings and that they could only result from sheer surmise or conjecture. Or there's such an overwhelming amount of evidence in favor of the movement, in this case, Occoquan, that reasonable and fair-minded jurors could not arrive at a verdict against Occoquan. Well, if you don't have a cause of action under 9406, it's not a really difficult burden, is it? Well, that wouldn't be a jury finding, Your Honor. That would be a legal issue. And we're gonna be dealing with that, certainly. Let's talk about that first then. In the appellant's brief, section B2, at page 26, they argue that we were precluded from enforcing our security interest because we didn't plead that claim. Docket entry one is the complaint. I'd like to read some of the paragraphs in that complaint that I think are important for the panel to hear. Paragraph 11. You've been told that all we did was seek our private right of action under 9406 and that, therefore, we didn't assume any responsibility for proving the obligations that were required under the underlying relationship between the parties. That's what the trial courts was told and discounted, and that's what your honors have been told. Paragraph 11 of our complaint. Occoquan and Connolly entered into an agreement titled Local Counsel Agreement, a duplicate of which is attached. The underlying contractual relationship agreement was attached to our lawsuit as an element of our claim. Paragraph 12. On or about November 7th, 2012, Connolly entered into a non-recourse receivables purchase contract and security agreement with Durham. Paragraph 13. In addition to the sale of accounts, Connolly also granted Durham a security, as security for all present and future obligations of Connolly, a continuing security interest in the purchased accounts and a security interest in certain specified collateral, which included non-purchased accounts and all proceeds of those accounts. Before I continue, that was the critical paragraph of the complaint which established for Judge Marra why he completely discounted in his order the argument that was made again today that this case is identical to the SPS case. SPS did not include a claim for security interest. Well, your opposing counsel also indicates that the jury was only instructed on the statutory cause of action. Do you agree or disagree with that? I agree that there was an instruction on that cause. Was there an instruction on any other cause of action, breach of contract or any other cause of action? No, I don't believe that there was. I believe that the instruction was. The jury was only instructed on one issue. They were instructed on the 9406 issue. We did not assert in that instruction that there was a private right of action being asserted. We simply asserted that they breached their obligation to pay us, and as a result, they did not discharge their obligation. In paragraph 15, on or about December 21st, 2012, and again on to September 10th, 2013, and again on January 7th, Durham transmitted a letter to Ocwen advising Ocwen that the purchased accounts had been assigned to Durham and that Ocwen should pay all existing and future invoices to Durham. We characterized count one as a breach of a statutory duty to pay accounts. That has been the basis for the argument. It was not an accurate statement or not as accurate as it could have been, but under the case law, the fact that we titled it that doesn't dictate what the claim is. And as a result of the pleadings that were asserted in paragraphs 18 through 22, pursuant to the factoring agreement Connolly offered and Durham agreed to purchase certain accounts arising from the provisions of professional services, pursuant to 9406 of the Uniform Commercial Code and as agreed between Durham and Connolly, the factoring agreement, Durham was entitled to notify them of right to receive payment, and Durham, in fact, in paragraph 21, notified Ocwen of Durham's rights, advising them that Ocwen had purchased the accounts and that Ocwen should pay all existing and future invoices only to Durham. And then lastly, Durham's notices of assignment contained the statutorily required information of the assignment of all then existing and future accounts. The factoring agreement that was attached to the complaint specifically provided in paragraph four that we were granted a security interest as collateral for repayment of any and all obligations and liabilities whatsoever. And in paragraph 4.2, the collateral that we received was any collateral now or hereafter described in any UCC filed against the client, naming Durham as the secured party and all of clients' right, title and interest into the following property, now or hereafter acquired, section 4.2.1, all accounts, parenthetical, including accounts purchased by Durham here under and repurchased by client. Close parenthetical. So you were proceeding on the purchased accounts as well as the accounts in which there was a security interest? There was no question about that, Your Honor. No question whatsoever. I'm confused because in your brief, in your summary of argument on page 18, you say the trial court correctly denied Ocwen's motion for judgment as a matter of law, thus permitting Durham to enforce its security interest in the accounts. And there's no reference to the, those are the accounts in which you have a security interest but there's no reference to the purchased accounts. Well, we did not proceed on any level at all in any part of the case that we had to prove purchased accounts. That was not our position. And I think that Your Honor hit it right in the head when you indicated what does 9406 require. 9406 does not require a party to establish specific accounts that relate to the 9406 assignment. Once a notice of assignment is delivered indicating that there's an obligation to pay the assignee, it doesn't matter whether the accounts are purchased, meaning we advanced against them, or unpurchased. And by the way- Well, what if we disagree with you on your interpretation of 406 and conclude that it does not include accounts in which you had a security interest? And it only included purchased accounts? Then in that case, we would not be able to sustain our cause of action. That would probably be one of the most disruptive rulings throughout the country because every bank that takes a security interest in a borrower's collateral and does not lend specifically against accounts hundreds of times a day, establish lockbox relationships where they finance people for working capital in order to continue to have this country move with adequate credit facilities. They depend and rely upon the right to receive direct payment from the obligation parties, the customers, to have those payments made into a lockbox. If they have to prove purchase accounts as opposed to merely having a security interest, which is not the case, and I'll deal with it in a little more detail, that would be extremely disruptive for any financing that goes on in connection with these facilities. I notice, I'll just point out that the order I'm referring to by Judge Morrow was Docket Entry 156, where he said, the court rejects defendant's argument that the plaintiff must identify actual purchases and identify actual CGAW Connelly-Ganey invoices it purchased. Significantly, the case law upon which defendant relies, citing to SPS, is unpersuasive because the complaint sought payment on purchased accounts, whereas in the instant complaint, Durham seeks payment on both purchased and non-purchased accounts at page seven. There's reference to 9607 of the UCC. Your honors might be interested in knowing that when they suggest that we had a responsibility to prove that or plead it, 9607 is in part six of article nine, which is the remedies section, not the elements section. 9607 is merely a statute which identifies the rights that a secured party has in the event of a breach. There was not a single case cited by Aquin in this appeal which established that we had any responsibility to cite to or otherwise refer and rely upon 9607. Although 9607, your honor, was contained in the joint pretrial stipulation and was and the issues that were identified by Aquin in connection with that element were specifically identified as tribal issues of fact. In connection with the standing argument on page 27 of the appellant's brief, they argue that we had no standing because there's a bankruptcy issue involved in this case. The lower court's order that was entered by Judge Sidney Weaver back in 1993 was originally adverse to a young lawyer who was 41 years old at the time and served as counsel to Capital Factors. That younger lawyer would be me. We didn't disagree very often, Judge Sidney Weaver and I, but we did disagree there. The reason for that decision was empire for him held that when my client, Capital Factors, received payment from the account debtor. Those payments constituted cash collateral that were property of the bankruptcy estate. He then held that because the debtor rejected our factoring agreement as an executory contract, our security interest was lost. We took that up to the district court and lost. We then took that up to the 11th Circuit and prevailed. But what Aquin didn't advise you all is the empire for him case involved a situation where we were actually paid the funds, not a situation where the debtor itself had already received payment and the lawsuit required us to go after the account debtor for the purpose of collecting again. There is no property of the estate issue here. The next issue was whether or not Aquin was an account debtor. So under the standard that I mentioned when I first started, the question is did the jury have sufficient evidence to show that Aquin was the party obligated on the accounts that were paid after they received our notice of assignment in connection with the servicing rights that they performed in regard to the GMAC acquisition? And your honors, I'd like you, there's not a lot of time left, so I'd like to point out that in volume five, page 90, 149, 113, 152, and 151, Aquin's representative clearly testified that they assumed the responsibility of paying the accounts, they assumed the responsibility of servicing the accounts, the checks that were identified for the jury in the exhibits at document 231-4 specifically indicated that they were checks drawn by Aquin Loan Servicing on Aquin Loan Servicing's accounts and it was Aquin Loan Servicing's money. There's a few issues that are a bit distracting, I call them white noise. I'd like to go through them with you very quickly. Number one, Aquin argues that because they didn't give us their consent, we didn't have the right to receive payment. I'm pretty comfortable that your honors have already read 9406, subsection D. It specifically says a term in an agreement between an account debtor and the assignor is ineffective to the extent it seeks to prohibit, restrict, or require the consent of the account debtor. Why is that? Because the Uniform Commercial Code Drafting Committee and every legislature in this country has decided that it's more important to allow people to get financing than it is to allow an account debtor to suffer a small inconvenience of getting a notice of assignment and paying the assignee. It also goes on to say that you can't use an element of default in a contract to preclude the right of assignment. The next item of white noise is their argument at B1, section 24, where they say that we didn't prove an assignment because we didn't establish that we purchased the accounts. They cited to no case in support of that position. None. We cited to a plethora of court decisions, including Apex, in which that court specifically indicated that there's no distinction whatsoever, none, for the purposes of a 9406 assignment, whether an account is purchased or whether or not there's a security interest in it. Speaking of not citing cases, I want to go back to this argument of private cause of action under 9406 and the cases that have been cited specifically from, I believe, New York and some other jurisdictions. Have you cited any cases in which a court has recognized a cause of action in which there was not an additional claim, common law claim asserted, in addition to 9406? I believe the answer would be yes, Your Honor. When I say cited, we provided the court with supplemental authority. That was an order entered by Judge James Robard out of the United States District Court for the Western District of Washington and Seattle. It's document 145 in the record. It's a case called United Capital Funding Court versus Erickson. In that case, Judge Robard specifically held that Forrest Capital was an unpublished decision which sought to predict how a Maryland court would rule. He specifically found, as did Judge Mara in our case here, that when one is asserting a claim under 9406, you're entitled to rely on the state law in connection with the common law rights that arise in connection with 9406. What the judge said in that case was, unlike the decision in Forrest Capital, in this case, they clearly recognize that an assignee has the right to sue under their common law and that pleading a claim under 9406 gives rise to that. Your Honor, I don't, I hope, and I don't have much time, I'm gonna answer your question, then I have to stop. I'm specifically looking at toward New York law because that's really what we're. And the New York law that we cited to, Your Honor, is that that was the case of Van Gretchen versus Graves, which as of 1809, we're talking 200 years, New York has recognized a claim by an assignee against an obligor at common law for the purpose of collecting an assigned account. Right, that's a common law claim, but my question really relates to whether you have any case law that would recognize a claim under 9406 that does not include a common law claim. Looks like all the cases that you've cited. I believe that the court, in making that distinction, we believe that we've alleged a common law claim. Understood, but if we disagree with that, then you're alleged with a claim under 9406, and that's the reason for my question. And if you disagree with that, our position is in connection with 9406, one doesn't have to assert that there's a private right of action under that statute to prevail. One only needs to assert that there was an underlying relationship between an account debtor and an assineur, that that right was assigned, that the security agreement or factoring agreement between the parties granted a party a security interest in the accounts, and as a result of the payment made, there was no discharge of the obligation. The Twombly case and other decisions have, in our opinion, clearly established that one doesn't have to plead a common law claim. You can assert the elements necessary to establish a common law right in connection with an argument that there was a violation of 9406, and as a result, the obligation was not discharged. That's the position we take. Thank you. Your Honor, I find it odd that I have to say this, but the legal theory in a case matters. It determines how the issues are litigated, it determines what you have to prove, it determines how the jury's instructed and what they are required to find. Their complaint says, this is in action under 9406, 9-406A of the UCC, paragraph 17, directly under where it says, count one, breach of the statutory duty to pay accounts. The jury instructions, page eight of the jury instructions. Durham has brought a claim for violation of the New York Uniform Commercial Code, section 9-406A, to establish that Aquin violated section 9-406A, Durham must prove. We can talk about Twombly all day long, we could talk about reading a complaint broadly, which is what that Washington court did, but the fact of the matter is, they pled a statutory cause of action that does not exist. They went to the jury on a statutory cause of action that does not exist, and they were allowed to get a judgment against Aquin on a statutory cause of action that does not exist based on underlying obligations, whether it's purchased accounts or security interest, that they did not prove and were not required to prove. That is the legal issue before this court, and we respectfully believe that this court should reverse. In light of your set-off argument, what's the remedy? Well. If we agree with you that there's no private cause of action under 406. Then the case is over. We can't get, we're not getting money back from Durham, so the case is over, our set-off argument goes by the wayside, Your Honor. All right, thank you. Thank you.